CITY OF ST. LOUIS, Respondent, *v.* JOHN W. HERTHEL, Appellant.

### December 4, 1883.

1. CONSTRUCTION OF STATUTES — GENERAL AND SPECIAL WORDS. — General words, in a city charter, preceded by particular words are to be held as applying to the persons or things of the same kind as those that precede.

2. —— RULE OF INTERPRETATION. — The subject-matter, the context, and the apparent intent of the legislature are to be considered in interpreting a statutory clause.

3. MUNICIPAL CORPORATIONS — CITY CHARTER — LICENSES — POLICE POWER. — A city charter which empowers the municipal legislature to "license, tax, and regulate lawyers, doctors, dentists, artists," and others enumerated, and which concludes with the words, "and all other trades, avocations, or professions whatever," empowers the city to impose a license tax upon architects, though they be not expressly named.

4. —— EJUSDEM GENERIS. — Architects, as members of a liberal profession, are *ejusdem generis* with lawyers, doctors, artists, and others of like professions.

5. CONSTRUCTION OF STATUTES. — The passage of a statute prohibiting the taxing of lawyers, doctors, and others enumerated, does not affect the right of the municipality to tax other professions not enumerated or included in the inhibition by general terms.

APPEAL from the St. Louis Court of Criminal Correction, NOONAN, J.

*Affirmed.*

KLEIN & FISSE, for the appellant: Architects are not named in the enumeration of pursuits which are subject to be licensed. Neither are they embraced within the general words following the particular enumeration; for it is uniformly held that wherever general words follow particular words of description, the general words do not enlarge the prior particular words, but are restricted in their application to classes similar to those particularly designated. — Sedgw. on Stat. Con. 423 ; Potter's Dwar. Stat. 236 ; *City of St. Louis* v. *Laughlin*, 49 Mo. 559 ; *Butler's Appeal,*

73 Pa. St. 458; *Drake* v. *Phillips*, 40 Ill. 388; *Wright* v. *Norwich, etc., Transfer Co.,* 8 Blatchf. 22.

ASHLEY CLOVER, for the respondent: An architect, whose profession is certainly a learned one, is a member of the same *genus*, is *ejusdem generis*, with a lawyer, doctor, etc., although in many respects there is no resemblance between the occupations. — *Butler's Appeal*, 73 Pa. St. 448; *Whitmore* v. *Bedford*, 5 M. & G. 13; *Regina* v. *Reid*, 28 Eng. L. & E. 133; *Woodworth* v. *The State*, 26 Ohio St. 196; *Foster* v. *Blount*, 18 Ala. 687; *United States* v. *Fisher*, 2 Cranch (U. S.), 358; *The State* v. *Williams*, 2 Strobh. (S. C.) 474; *The State* v. *Holman*, 3 McCord, 306.

BAKEWELL, J., delivered the opinion of the court.

The defendant was convicted of violation of Article 20, chapter 37, of the revised ordinances of St. Louis, in this, that he carried on the business of an architect in St. Louis without having obtained a license. On trial anew in the court of criminal correction, the case was submitted on an agreed statement of facts; and the defendant was again convicted.

The only question presented for our consideration is as to the validity of the ordinance, the first section of which is as follows: "It shall not be lawful for any person to exercise within this city the business of a money broker, advertising agent, architect, bill poster, claim agent, conveyancer, civil engineer and surveyor, engraver, lithographer, loan agent, mercantile agent, oculist and aurist, patent solicitor, photographer, sewing machine agent, veterinary surgeon, or keep a billiard table, nine or ten-pin alley, shuffle-board or bagatelle table, or to own, conduct, or manage for gain, a theater or other exhibition, show or amusement, without a license therefor."

It is contended by the appellant that, under the city charter, the municipal assembly has no authority to levy a tax upon the privilege of exercising the profession of an

architect. This is the only objection urged here against the conviction, and the only point that is presented for our consideration.

Under the charter, the mayor and assembly have power within the city, by ordinance not inconsistent with the constitution or any law of the State or of the charter (sect. 26, Art. III., subd. 5): "*Fifth.* To license, tax, and regulate lawyers, doctors, doctresses, undertakers, dentists, auctioneers, grocers, merchants, retailers, hotels, boarding houses, tenement houses, office buildings, public buildings, public halls, public grounds, photographists, artists, agents, porters, runners, drummers, public lecturers, public meetings and shows, real estate agents and brokers, financial agents and brokers, horse and cattle dealers, patent right dealers, inspectors and gaugers, stock-yard proprietors, examiners of titles, conveyancers, mercantile agents, insurance companies and insurance agents, bankers, banking or other banking corporations or institutions, telegraph companies or corporations, street railroad cars, livery and sale stables, hackney carriages, private carriages, barouches, buggies, wagons, omnibuses, carts, drays, and other vehicles, and all other business, trades, avocations, or professions whatever; to fix the rates for carriage of persons, and of wagonage, drayage, and cartage of property, and regulate the width of the tires of all vehicles for heavy transportation; to license, regulate, tax or suppress ordinaries, hawkers, peddlers, brokers, pawn-brokers, money changers, intelligence offices, public masquerade balls, street exhibitions, dance houses, fortune tellers, pistol galleries, lottery ticket dealers, corn doctors, lock, private and venereal hospitals, museums and menageries, equestrian performances, horoscopic views, lung testers, muscle developers, magnifying glasses, billiard tables, or any other table or instrument used for amusement; circuses, operatic, theatrical, and other exhibitions, shows, and amusements; saloons, beer houses, tippling houses, dram-

shops and gift enterprises; and to suppress prize fights, coon fighting, dog fights, chicken cock fights, gaming or gambling houses; and to suppress bawdy and disorderly houses, houses of ill-fame and assignation; to provide for and enforce the registration of all births, marriages, or deaths; to license, tax, regulate or suppress all occupations, professions and trades not heretofore enumerated, of whatever name and character.''

It is agreed that the number of architects in St. Louis is about one hundred.

It was held in *City* v. *Laughlin* (49 Mo. 559), that the charter of St. Louis, of March 4, 1870, then in force, gave no power to the city to levy a tax upon attorneys at law. The language of that charter, under which the authority was claimed, was as follows: '' The mayor and city council shall have power within the city, by ordinance not inconsistent with any law of this State, to license, tax, and regulate auctioneers, grocers, merchants, retailers, hotels, boarding houses, tenement houses, office buildings, public halls, public grounds, concerts, photographers, artists, agents, porters, runners, drummers, public lectures, public meetings and shows, real estate agents and brokers, horse and cattle dealers, beer houses, patent right dealers, inspectors and gaugers, stock-yard proprietors, examiners of titles, conveyancers, mercantile agents, insurance companies, banking or other corporations or institutions, street railroad cars, hackney carriages, omnibuses, carts, drays, and all other vehicles, and all other business, trades, avocations, and professions whatever.

The supreme court held, in the case just cited, that the profession of the law is not *ejusdem generis* with any of the trades and avocations specified in the section of the charter of 1870 which it was then considering and which we have just quoted, and that the avocation of an attorney at law, for that reason, was to be held not to be embraced in the

sweeping clause at the end of the section. This seems to be clear enough as to the charter of 1870. No one of the liberal or learned professions is named in the section before the supreme court in *The City* v. *Laughlin.* The avocation of an attorney at law is not *ejusdem generis* with that of a grocer, merchant, or retailer.

But the provision under consideration in the case at bar, differs materially from that before the supreme court in the case just cited. The new charter, now under consideration, before the general clause at the end of the section, names, specially, several of the learned and liberal professions.

The rule of interpretation in such case is that, when particular words are followed by general words, the latter are to be held as applying to persons and things of the same kind as those that precede. That is, in the construction of statutes as well as of private instruments, general words are restricted in their meaning by the subject-matter, the context, and the apparent intent; and in any enumeration of particulars followed by general terms, the latter are to be restricted to cases *ejusdem generis.* 30 Vt. 746.

We are not to enlarge the letter of the charter before us by an equitable construction, as in the case of a remedial statute; but we are to construe it according to the intent of the framers; and that intent must be gathered from the language and object of the instrument, giving to that language an interpretation neither strict nor strained.

The words "all other business, trades, avocations, or professions whatever," must not be wholly rejected. The maxim "*expressio unius est exclusio alterius,*" is not to be so applied that the city is to be held powerless to tax any calling not expressly named in its charter by its proper name.

We think that architects are, for the purposes of con-

struction here, to be held as *ejusdem generis* with lawyers,
doctors, dentists, and artists, as exercising a profession of
a technical character, for the useful exercise of which, long
and careful study, as well as some special experience, is
required.   Lawyers and doctors belong to the learned pro-
fessions, strictly speaking ; perhaps dentists, artists, and
architects do not ; but, nevertheless, neither the one pro-
fession nor the other is purely mechanical ; and lawyers,
doctors, architects, and artists are all classed together as
belonging to the liberal professions, and are all *ejusdem
generis* in that respect.   It may be said that ministers of the
gospel and officers of the army and navy are all members
of liberal professions, and yet could not be considered as
*ejusdem generis*, within the scope of the ordinance.   This
is undoubtedly the case ; but it is quite obvious that men
can not be said to practice the business or avocation of sol-
dier or sailor within a city, and that the avocation of a
minister of the gospel has no place amongst secular pro-
fessions.

The legislature did not intend by the charter to prohibit
the city from taxing any business, trade, avocation, or
profession not expressly named in the charter ; and we
have no doubt that it did intend to give the city the
same right to tax architects as it has expressly given it to
tax doctors and lawyers.   No reason appears why the
one profession should be subject to taxation and the other
be exempt.

We think the judgment should be affirmed.   It is so
ordered.   All the judges concur.

BAKEWELL, J., delivered the opinion of the court on
motion for a rehearing.

Counsel for the appellant move for a rehearing, and, in
that motion, now for the first time, call our attention to the
act of the general assembly of March 6, 1879, entitled "An

act to prevent the licensing or taxing by municipal corporations of certain professions."

The provision reads as follows: " Hereafter, no person following for a livelihood the profession or calling of minister of the gospel, teacher, professor in a college, priest, lawyer, or doctor of medicine, in this State, shall be taxed or made liable to pay any municipal or other corporation in the state, any tax or license of any description whatever, for the privilege of following or carrying on such profession or calling, any law, ordinance, or charter to the contrary notwithstanding." Acts 1879, p. 45.

The provision of the charter under construction took effect at the end of sixty days from its ratification on August 22, 1876. According to the principle of construction applicable to the language of that charter, the city had the power, as we hold, under its provisions, to tax the privilege of exercising the profession of an architect. The law which we have cited above does not deprive the city of the power to tax architects which it already had. The law of 1879 uses no general terms, but expressly names the callings which no municipal corporation shall tax. It neither says nor implies that architects are not to be taxed. If, then, they were taxable by virtue of the charter of 1876, on the day that charter went into effect, they are taxable now, for anything shown to us.

We have nothing to say in answer to so much of the brief of learned counsel for the appellant as is mere reargument of the question argued and submitted and disposed of, so far as this court is concerned, in the opinion filed.

The motion for a rehearing is overruled. All the judges concur.