## Ex Parte ROBERT C. SMITH, Petitioner.

### Division Two, November 29, 1910.

1. **LOCAL OPTION LAW: Must Apply to Whole State.** An act to regulate the licensing of plumbers in all cities of the State having a population of more than fifty thousand inhabitants, and providing that it shall be inoperative until adopted by proper ordinance by the city to which it relates, is invalid and void. A local option law, in order to be constitutional, must apply to the whole State, and must confer upon the people of every locality the privilege of taking advantage of it, or not, as they see fit.

2. ———: ———: **Disregarding Nullifying Section.** Nor can the section which declares the act shall be inoperative until adopted by ordinance by the city, be disregarded, and the rest of the act held to be valid. That section gives character to the act, and the act likely would never have received the approval of the Legislature without that section.

3. ———: ———: **Valid Ordinance.** But conviction for carrying on of the business of a plumber without a license as required by an ordinance of the city may be upheld if the ordinance is not based on said void act, but was enacted in pursuance to valid charter provisions which clearly authorized it.

4. **EJUSDEM GENERIS: All Other Business: Plumbing.** The purpose of the rule of *ejusdem generis* is to ascertain the intention of the lawmaker. It is not a rule of abrogation, and is never permitted to defeat the real purpose of a statute or charter provision as that purpose is gathered from the whole enactment. A clause in the charter of St. Louis giving the Mayor and Municipal Assembly power to license, tax and regulate various kinds of business specified "and all other business, trades, avocations or professions whatever," although not mentioning plumbing, is broad enough to authorize an ordinance requiring a plumber, as a prerequisite to his right to

carry on the business of a plumber, to have a license from a. board of examiners.

5. PLUMBING: Constitutional Right. The natural right of an individual to the gains of his own industry, and to liberty and the pursuit of happiness, is not absolute. He enjoys those rights subject to the paramount right of the community to so regulate his business, or trade or pursuit that, in exercising it, no injury will result to the public health. The business of plumbing is so intimately connected with the public health and comfort, especially in large centers of population, where scarlet fever, typhoid fever, diphtheria and other diseases are apt to become epidemic, that it is a proper subject of reasonable police regulation; and the city has a right to require that the citizen possess certain necessary qualifications before he can carry on the business of a plumber, and to enforce that regulation by requiring him to obtain a license from a board of examiners and by punishing him by fine if he undertakes to carry on the business without such license, and to imprison him if the fine is not paid; and none of such regulations or requirements or penalties transgresses his said constitutional rights.

6. ———: ———: Due Process of Law. An ordinance which requires every person who carries on the business of a plumber, and operates alike upon all who come within its provisions, is not violative of the Fourteenth Amendment to the Federal Constitution which provides that no State "shall deprive any person of life, liberty or property without due process of law."

7. ———: ———: Charter Powers of City: Standing of Statute. A charter power of a freehold city, like Kansas City and St. Louis, under the Constitution, has all the sanction of a legislative enactment by the General Assembly.

8. ———: Fee: Tax. A fee of one dollar a year, exacted by the city of each person who obtains a license to carry on the business of a plumber, is not a tax, but a mere license fee, and the ordinance imposing it is in no sense a revenue measure.

## Habeas Corpus.

WRIT DENIED.

*L. A. Steber* for petitioner.

(1) A local option law that authorizes the people of only a limited portion of the state, or of every

portion of the state except specified parts thereof, to avail themselves of it, is not a valid law, for laws must be made by the Legislature and must be co-extensive with the territorial limits of the state, in respect to the powers conferred or the burdens imposed. (2) Rights guaranteed to a citizen by the Constitution cannot be abridged by legislation under the guise of a police regulation. (3) The Act of 1903 does not authorize the city to impose any penalty for the violation of any city ordinance. The state cannot authorize a city to make an offense against the state a separate offense against the city. This would be double punishment for the same offense. (4) The police power cannot be so absolute as to be beyond the cognizance of the courts to determine whether it has been reasonably exercised in a given case or not. River Rend Co. v. Behr, 77 Mo. 91; In re Jacobs, 98 N. Y. 98; 22 Am. & Eng. Ency. Law (2 Ed.), 938, 939; Lochner v. New York, 198 U. S. 45; Adair v. United States, 208 U. S. 161. (5) The act is obnoxious to the Fourteenth Amendment to the United States Constitution. (6) "The mere form an act is made to assume will not determine its constitutional character; that will be determined by its operation." (7) Section 13 of the Act of 1903 renders the entire act void. By that section the act shall be inoperative until adopted by proper ordinance of the city. "It substitutes for, or rather adds to, the legislative will another will, which makes it necessary to the existence of the law. This is unconstitutional." (8) Before a person can be deprived of the liberty of following an employment, those who make the claim must show authority therefor, instead of calling upon that person to show how and where the authority is negatived. (9) The ordinance is not a police, but a trade regulation. What the Legislature cannot do directly, the municipality certainly cannot do indirectly. (10) The right

to labor is an inherent right, never surrendered in a republican form of government. 4 Am. and Eng. Ency. Law (2 Ed.), 59-60; Orr v. Quimby, 54 N. H. 613. Although the petitioner was charged with following the "business" of plumbing, this means labor. 5 Am. and Eng. Ency. Law (2 Ed.), 72-79. "Occupation signifies the principal business of one's life, vocation, calling, trade; the business which a man follows to procure a living or obtain wealth." 21 Am. and Eng. Ency. Law (2 Ed.), 769. The "trade, business or calling" of a plumber, relates to the mechanical employment. 28 Am. and Eng. Ency. Law (2 Ed.), 339, 340. (11) A comparison between the ordinance and the legislative act shows conclusively that the municipal assembly of St. Louis in passing the ordinance followed the lines of the legislative act, thus showing conclusively that the act was regarded by them as the foundation for the ordinance. While this fact, as a legislative assertion, does not bind the court in its construction and adjudication, yet "straws show which way the wind blows." (12) This act evidently being assumed by the municipal assembly to be a general law, that body must have had in mind the provisions of Section 6258, Revised Statutes 1899, which provides that ordinances in their passage shall be in conformity to state law upon the same subject.

*Lambert E. Walther, A. H. Roudebush* and *Chas. P. Williams* for respondent.

(1) The business of plumbing has been many times decided to be a proper subject of police regulation. State v. Gardner, 58 Ohio 599; Douglas v. People, 225 Ill. 536; Caven v. Coleman, 96 S. W. (Tex. Civ. App.) 774; Singer v. Maryland, 72 Md. 464; People v. Warden, 144 N. Y. 529; State v. Justus, 90 Minn. 474; State v. Benzenberg, 101 Wis. 172. (2) The city is empowered, under its charter, to enact the ordi-

nance. Charter, art. 3, sec. 26, clauses 2, 5, 6 and 14; Kansas City v. Vindquest, 36 Mo. App. 588; Kansas City v. Richardson, 90 Mo. App. 461; Ruckert v. Railroad, 163 Mo. 276; National Bank v. Ripley, 161 Mo. 132; St. Louis v. Weitzel, 130 Mo. 619; St. Louis v. Herthel, 14 Mo. App. 471; St. Joseph v. Lung, 93 Mo. App. 626; St. Louis v. Bowler, 94 Mo. 632; State v. Schuchmann, 133 Mo. 111; State v. Bockstruck, 136 Mo. 335; State v. Stocker, 90 Mo. App. 357; Charter, art. 3, sec. 26, clauses 2, 6 and 14. The power to enact is not limited or abrogated by Sec. 6256, R. S. 1899. The license fee is a police regulation, and not a tax. 21 Am. and Eng. Ency. Law (2 Ed.), 773; Kansas City v. Grunsch, 151 Mo. 134; St. Louis v. Knox, 6 Mo. App. 249; St. Louis v. Dairy Co., 190 Mo. 504; Norfolk v. Flynn, 101 Va. 473; State v. McKinney, 74 Pac. 1099; State v. Bengsch, 170 Mo. 109; State v. Bixman, 162 Mo. 1. (3) The ordinance is not unreasonable on its face, and there is no evidence of its unreasonable operation. It is within the police power. State v. Meyrose, 139 Mo. 560; City v. Galt, 179 Mo. 8; St. Louis v. Theatre Co., 202 Mo. 690. (4) The ordinance attempts no restrictive conditions against plumbers licensed by other cities. (5) There can be no question of conflict with the Act of 1903, for the reason that that act has never been adopted in St. Louis, and for the further reason that that act is void. Laws 1903, p. 82; State ex rel. v. Nast, 209 Mo. 708; Pollock v. Trust Co., 158 U. S. 601; State v. Tea Co., 171 Mo. 634; State v. Wardell, 153 Mo. 319; Allen v. Louisiana, 103 U. S. 80; State ex rel. v. Railroad, 195 Mo. 229; Merchants' Exchange v. Knott, 212 Mo. 642.

GANTT, P. J.—The petitioner was fined ten dollars in the police court of St. Louis and imprisoned in the St. Louis city workhouse for carrying on the business of a plumber without having been licensed as required by an ordinance of said city numbered 23007.

The specific charge was for a violation of sections five and ten of the said ordinance.

Section five provides that upon satisfactory proof of the qualifications and fitness of the applicant for a plumbing license, a board of examiners of plumbers shall issue to him a certificate, which shall entitle him to engage in or work at the business of plumbing for a period of one year. And no person shall be entitled to obtain from said board a certificate of qualification, as master, or employing plumber, or a journeyman plumber, except as in the ordinance provided, who shall not first have passed a satisfactory examination before said board as to his knowledge, experience and skill in practical plumbing, house draining and plumbing ventilation.

Section ten provides a penalty of not less than ten dollars nor more than one hundred dollars for any person who shall engage in the business of plumbing in said city without having been duly licensed as required by the ordinance.

The petitioner claims that this ordinance is founded for its authority on the plumbing act of the Legislature approved March 27, 1903, Laws 1903, pages 82-84, and that said act is an unconstitutional law because it was local and special and in violation of section 53 of article 4 of the Constitution of Missouri. And because the said act was in violation of petitioner's constitutional right to life, liberty and property. He also maintains that the ordinance is outside of the charter and statutory powers of the city of St. Louis and is unreasonable and therefore void. On the other hand, the city insists that the ordinance is a perfectly valid exercise of charter powers of the city of St. Louis, and that the business of plumbing is the proper subject of police regulation.

Clauses of the charter of the city of St. Louis applicable to this discussion are clause 5 of section 26 of article three of the charter, which give the Mayor

and the Municipal Assembly the power to license, tax and regulate various kinds of business. This clause, after specifying the various kinds of business, further provides the power to license, tax and regulate all other business, trades, avocations or professions whatever. And clause six of the said section provides that the Municipal Assembly shall have power to secure the general health of the inhabitants by any measure necessary, and to regulate . . . . the carrying on of any business which may be dangerous or detrimental to the public health. And clause fourteen of said section 26 of article 3 gives the city power "to pass all ordinances not inconsistent with this charter or the laws of the state as may be expedient in maintaining the peace, good government, health and welfare of the city, its trades, commerce and manufactures and to enforce the same by fines and penalties not exceeding five hundred dollars."

I. As already said the petitioner insists that the ordinance is founded upon the Plumbing Act of March 27, 1903, and that act is void because it is not a general law, but is local and special, as it can only be made to apply to cities having fifty thousand or more inhabitants. The title of this act declares it to be a law "to secure the registration of plumbers in all cities within this state having a population of more than fifty thousand inhabitants, and to provide for a board for the examination of plumbers therein," etc. Thus on its face, it applied to all cities in this state of the population mentioned, but section thirteen of the act provides: "The provisions of this act shall be inoperative until adopted by proper ordinance by the city or town to which it relates." In a word, in effect it is a local option statute which can only become a law when a particular city makes it operative therein. Until a city of the class mentioned adopts it, it is a dead law, and it is only when the city by proper ordinance

does adopt it that the act itself and its penalties as state enactments, for the first time come into life and being. In a word, this act was not a complete law when it left the hands of the Legislature; it depended upon the action of every city of the population mentioned therein whether it became a law within such city or not. Local option laws have often been held to be constitutional in this State, where the laws themselves were complete enactments when they left the Legislature, and did not depend upon any outside authority to make them laws. "But local option laws, that is, laws passed by the State, which may or may not be taken advantage of and utilized as the people of each locality elect so to do, or not, must apply to the whole State, and must confer upon the people of each locality a privilege of taking advantage, or not, of those laws as they see fit. A local option law that authorizes the people of only a limited portion of the State, or of every portion of the state except specified parts thereof, to avail themselves of it, is not a valid law, for laws must be made by the Legislature and must be coextensive with the territorial limits of the state in respect to the powers conferred or the burdens imposed." [State ex rel. v. Railroad, 195 Mo. l. c. 245.]

The language of this Act of 1903 on its face provides that it shall not be operative until it is adopted by the city or town to which it relates, and thus takes it out of the reasoning upon which local option laws have been sustained. And in our opinion, the act is clearly unconstitutional and void, nor can we reject section 13 and thus save the enactment. This section gives character to every part of the act, and in our opinion the act never would have received the approval of the Legislature without this section in it, and yet there is not the slightest hint of such a radical change in the character of the bill from that indicated in its title.

It is not deemed necessary to amplify reasons for

holding the act unconstitutional, as both the petitioner
and the city counselor concur in the view that it is
unconstitutional. Moreover, it is conceded that this
act, even if valid, has never been adopted and become
operative within the city of St. Louis, and hence it
can form no basis for the ordinance which is assailed
by the petitioner in this case. This act being then
out of the way, the question recurs, is it a valid exer-
cise of the charter powers of the city of St. Louis?
Under the charter provisions quoted in the statement,
the city has large powers to license and regulate trades
and avocations, but it is insisted by the petitioner that
because plumbers are not specifically named that the
city has no right to license and regulate their business,
and he invokes the rule of *ejusdem generis,* which
requires that, ''Where a particular class is spoken of,
and general words follow, the class first mentioned is
to be taken as the most comprehensive and the general
words treated as referring to matters *ejusdem generis*
with such class.'' [Broom's Leg. Maxims (6 Ed.), p.
625.] While this maxim has often been applied by this
court it has been said that its purpose was to ascertain
the real intention of the lawmaker and not a rule of
abrogation. As was well said by VALLIANT, J., in
Bank v. Ripley, 161 Mo. 132, ''It is not a cast-iron
rule, it does not override all other rules of construc-
tion, and it is never applied to defeat the real pur-
pose of the statute as that purpose may be gathered
from the whole instrument.'' Judge SHERWOOD, in
State v. Schuchmann, 133 Mo. 120, applied the rule
*ejusdem generis* and spoke of it as a ''good rule of
construction,'' but in St. Louis v. Weitzel, 130 Mo. 619,
the same learned judge did not find that rule prevented
his giving the words ''regulate or suppress all occu-
pations, professions and trades not heretofore enumer-
ated of whatever name and character'' (par. 5, sec. 26,
art. 3, Charter of St. Louis) their full effect so as to
include the power to license the business of hauling

garbage. See, also, St. Louis v. Herthel, 14 Mo. App. 471; St. Joseph v. Lung, 93 Mo. App. 628; St. Louis v. Bowler, 94 Mo. 630; State v. Schuchmann, 133 Mo. 111.

In our opinion then the city under its charter had the power to license and regulate the business of plumbing, unless in so doing, it violated the Constitution of the state in interfering with the constitutional right of the defendant to his natural rights to the enjoyment of the gains of his own industry, and deprived him of his property without due process of law. The natural right to health, liberty and pursuit of happiness secured by our Constitution and Bill of Rights is not an absolute right. The individual must sacrifice a part of his particular interest if the sacrifice is a necessary one in order that organized society as a whole shall be benefited. The restraint of personal action is justified when it obviously tends to the protection of the health and comfort of the community and the individual's constitutional right is not thereby violated. While there may be some cases to the contrary, the great weight of authority in this country is to the effect that the business of plumbing is so intimately connected with the public health, especially in large centers of population where scarlet fever, typhoid fever, diphtheria and other diseases are apt to become epidemic, as to be the proper subject of police regulation. [People ex rel. v. Warden, 144 N. Y. 529; State v. Gardner, 58 Ohio St. 599; Douglas v. People ex rel., 225 Ill. 536; State ex rel. v. Justus, 90 Minn. 474; State ex rel. v. Benzenberg, 101 Wis. 172; Caven v. Coleman, 96 S. W. 774.] The right of a citizen under our Constitution to follow any legitimate business, occupation or calling which he may see fit to engage in, and to use such right as a means of livelihood, is fully secured, but it is subject to the paramount right of the State to impose upon the enjoyment of such a right

a reasonable regulation which the public welfare may require.

In People ex rel. v. Warden of the City Prison, 144 N. Y. 529, it is said: "We know that important plumbing work calls for plans and designs and requires skilled supervision. It is some guaranty of these requirements being met, that the plumber employed upon the particular work, and who must employ plumbers and assistants in carrying out the work engaged upon, is competently certified, and therefore held out to be skilled and capable in his business. The layman in his ignorance is obliged to put some trust in the plumber he engages; for the plumber's work is not only one calling for the exercise of skill, but it is done in places which are dark, or more or less inaccessible. The Legislature, in creating a system by which [are made known] the qualifications of plumbers who propose to have work performed by others under their direction, as it seems to me, aids the citizen in an important degree in placing his confidence, and furnishes some safeguard against the performance of bad and unsafe work. That the men employed by the master plumber may prove untrustworthy in practice, or may neglect the work committed to them, certainly can furnish no ground for attacking the purpose of this statute; for the presumption and the natural probability are the other way, that a master plumber who has been certified by the board will exercise care in the selection of his employees, and that he will be competent to see and correct their faults and omissions. Every reason, in my opinion, which bears upon the citizen's comfort and health, demands that we sustain this statute as a step in the right direction."

In State v. Gardner, 58 Ohio St. 599, the Supreme Court of Ohio, in considering the right of the Legislature to regulate the business of plumbing and provide for the license of plumbers, said: "True it is that the business of the plumber is not ranked with

the learned professions and that much of his work is mechanical merely, calling for the exercise of deftness of the hands rather than the possession of scientific knowledge. Yet a certain degree of training and experience is absolutely necessary to render one intelligent as to the ground work of his calling as well as competent and skillful in its exercise. He is required to put into our dwellings and public buildings tanks, pipes, traps, fittings and fixtures for the conveyance of gas, water and sewage, which require, among other essentials, the keeping out and protection against gases which are destructive of health and not infrequently of life itself. That it is of the highest importance that the drainage and sewerage of our public buildings and private tenements should be as skillfully planned and executed as the modern standard of science admits, would seem not to be open to question. And surely it is reasonable to suppose that one who has been educated to understand the scientific principle necessarily involved in work of this character, and to comprehend the reasons and teachings of experience upon which it is based, and the evil results which may follow neglect to observe it, will be more likely to provide the needful safeguards than one who is ignorant upon the subject.''

We regard the business of plumbing as so intimately connected with the public health and the comfort of the citizens that there ought not to be any doubt that its regulation falls within the power of the Legislature in the exercise of its police power. The ordinance does not restrain individuals from working as plumbers; it simply requires that the man who holds himself out to do this important work shall be fitted for it and the ordinance imposes no unreasonable burden upon him. In this connection it need only be stated that it has been decided in various cases in this court that a charter power of a freehold city, like Kansas City and St. Louis, under our Constitution, has all the

sanction of a legislative enactment by the Legislature. We are of the opinion that the ordinance was clearly within the powers of the city conferred upon it by its charter and that it is perfectly reasonable regulation.

That the fee in this case is a mere license fee, being one dollar per year, we think is too obvious for any discussion. It is not a tax in any sense of the word, nor is it intended as such. Its amount on its face demonstrates that it is simply enough to cover the proper charges for the issuing of the license certificate. The ordinance was not intended as a revenue measure, and hence section 6256, Revised Statutes 1899, has no application to it.

The contention that the ordinance conflicts with the Fourteenth Amendment to the Constitution of the United States, which provides that no state "shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws," etc., is, we think, without basis. The ordinance applied alike to every person whether master or employing plumber or journeyman plumber and operates equally upon all who come within its provisions. Certainly the ordinance does not operate unjustly against the plumbers of other cities in this State. Section 7 thereof provides for the issue, without examination or examination fee, of a certificate to every plumber desiring to work at or engage in the business of plumbing, who has been duly licensed by the examining board of any other city in the state. And this right has been accorded them by the city.

In our opinion the petitioner was properly convicted for working at the business of plumbing, without first having been licensed, and accordingly it is ordered that he be remanded to the custody of the lawful keeper of the workhouse of the city of St. Louis.

*Burgess* and *Kennish, JJ.,* concur.