CITY OF ODESSA, Missouri, Plaintiff-Appellant,

v.

Wilfred BORGIC, Defendant-Respondent.

CITY OF ODESSA, Missouri, Plaintiff-Appellant,

v.

Mrs. Bertha EVANS, Defendant-Respondent.

CITY OF ODESSA, Missouri, Plaintiff-Appellant,

v.

Robert FILLER, Defendant-Respondent.

CITY OF ODESSA, Missouri, Plaintiff-Appellant,

v.

Mr. Joe HALSEY, d/b/a J & J Trailer Court, Defendant-Respondent.

CITY OF ODESSA, Missouri, Plaintiff-Appellant,

v.

John ZULLIG, Defendant-Respondent.

Nos. 25249–25253.

Kansas City Court of Appeals, Missouri.

June 1, 1970.

N. R. Bradley, Lexington, for appellant.

William Aull, III, D. W. Sherman, Jr., Lexington, for respondents.

CROSS, Judge.

This appeal of five consolidated cases challenges the authority of Odessa, Missouri, a city of the fourth class, to enact an ordinance requiring payment of an occupation license fee of not less than fifty dollars as prerequisite to the lawful operation of a trailer coach park within the corporate limits.

Each of the five cases originated in the police court of plaintiff city upon complaint that the defendant on a certain day named "did then and there unlawfully and willfully operate a trailer coach park without a license in violation of ordinance No. 954 of said city." In each case the defendant was adjudged guilty as charged and his punishment was assessed at a fine of $10.00, together with costs.

All five defendants appealed to the circuit court, where they filed identical motions to dismiss the pending actions. Upon stipulation by the parties and pursuant to order of the court, the five cases were consolidated for trial. Thereafter the circuit court heard evidence on defendants' motions to dismiss, sustained them, and entered orders of dismissal as to each of the five cases. Plaintiff city has appealed.

The parties are in agreement as to controlling facts. At the hearing on the motions to dismiss, Ordinance No. 954 was admitted in evidence by stipulation of the parties. It is preliminarily declared by Section 1 of the ordinance:

"That it is necessary and proper for the city of Odessa, Missouri, to license and regulate trailer camps and mobile home parks, under the powers conferred by the statutes of the State of Missouri for the maintaining of the peace and good government and welfare of the city."

The first positive mandate of the ordinance is Section 3, quoted as follows:

"License required. It shall be unlawful to establish, maintain, or operate, any trailer park, under whatever name or variation of name it may be called, in the City of Odessa, Missouri, without first having obtained a license therefor. Application for such licenses shall be made in writing to the City Clerk, and shall contain the name of the applicant, the location of the proposed park, the number of trailers to be accommodated, the sewer and water facilities therefor, and the type or types of buildings to serve as service centers for the accommodation and use of the occupants."

Section 5 sets the scale of annual charges for the required licenses as follows:

"Fee. The annual fee for such licenses shall be Fifty Dollars plus five dollars for each trailer coach over ten for which accommodations exist. If the number is increased, this shall be reported to the City Clerk, and the additional fee, if any, necessitated by such increase shall be paid before the additional spaces are put to use. When a license is applied for, or accommodations are increased during the license year, the fee shall be prorated on the basis of the number of months remaining in the license year."

Other sections of the ordinance prescribe extensive regulatory measures and requirements as to: preliminary submission of plans by applicant; character of applicants and employees; location and dimensions of parking spaces; paving of drives; visitors' parking facilities; water supply and metering; sanitary facilities, sewers and sewerage treatment, garbage and trash disposal; provisions for lighting. Section 15 of the ordinance provides penalties for violation of any provision thereof by fine of "not less than five dollars and not more than two hundred dollars for each offense."

The parties additionally stipulated, as matters of fact, that each of the defendants was in the business of operating a

trailer park or mobile home within the city of Odessa, and was so engaged on the date of the offense charged; that Ordinance No. 954 had previously been adopted by the city; that defendants had made no application for license or paid a fee therefor; and, that Odessa is a city of the fourth class.

The issue for this court's decision is sharply drawn. It is contended by plaintiff city that the ordinance is not a "licensing or taxing" ordinance, as such, enacted under its delegated authority to tax occupations or businesses. Plaintiff insists that the measure is a valid "regulatory" ordinance enacted under authority of the city's police powers delegated by V.A.M.S. Section 79.470 (all statutory references are to R.S.Mo.1959, V.A.M.S., unless otherwise noted) and that the license fee imposed is merely "incidental" to the expense of regulation of the trailer parks. Section 79.470 reads in essential part as follows:

"79.470. FURTHER POWERS OF BOARD

For any purpose or purposes mentioned in this chapter, the board of aldermen shall have power to enact and make all necessary ordinances, rules and regulations; and they shall also have power to enact and make all such ordinances and rules, not inconsistent with the laws of the state, as may be expedient for maintaining the peace and good government and welfare of the city and its trade and commerce; * * *."

On the other hand it is submitted by defendants that the ordinance is an attempted *license tax measure*, enacted contrary to the positive strictures of Section 71.610, quoted as follows:

"71.610. IMPOSITION OF TAX ON BUSINESS, When

No municipal corporation in this state shall have the power to impose a license tax upon any business avocation, pursuit or calling, unless such business avoca-tion, pursuit or calling is specially named as taxable in the charter of such municipal corporation, or unless such power be conferred by statute."

In connection with the restriction imposed by Section 71.610 upon the power of a city to exact occupation license taxes, it is appropriate to examine the source and extent of plaintiff's authority in that respect. Being a city of the fourth class, the City of Odessa has only those powers that are delegated to it by the statutes which constitute its charter. The sole grant of such authority to plaintiff derives from Section 94.270, as revised and amended in 1963, referable to cities of the fourth class, entitled "Power to License, Tax and Regulate Certain Businesses and Occupations". It is therein provided:

"The mayor and board of aldermen shall have power and authority to regulate and to license and to levy and collect a license tax on * * * (110 specifically named businesses and occupations) * * *."

For the purpose of this appeal it is significant that "trailer camps", "mobile home parks", "trailer coach parks" or "trailer parks" are not included in the list of businesses specifically named in Section 94.270 and are not susceptible of inclusion therein by implication.

We do not gainsay that plaintiff may have police powers, by reason of Section 79.470, to enact expedient legislation in the interest of the city's general welfare, necessarily referable and restricted to such specific grants of power as are otherwise contained in the body of statutory law which constitutes the city's charter. See Krug v. Village of Mary Ridge, Mo.App., 271 S.W.2d 867; State ex rel. Magidson v. Henze, Mo.App., 342 S.W.2d 261. It is conceivable that plaintiff may be clothed with requisite police authority to regulate and provide for "orderliness, sanitation, health and safety" (as it claims to have) in the operation of trailer parks, by reason of Section 79.380, which empowers the city to

enact ordinances "for the prevention of the introduction of contagious diseases in the city." The opinion in Krug v. Village of Mary Ridge, supra, would so indicate. However, those questions are not at issue here as necessary for decision. Nor, assuming that the city has such authority, is it necessary that we determine whether the attempted regulatory provisions of the ordinance are within the scope of its delegated powers, as lawful and appropriate police measures. The narrow issue presented is whether requiring payment of the sum of $50.00 (or more) in order to obtain a license amounts to a "license tax", within the meaning of those words as intended by the legislature when it enacted Section 71.610, and as that term has been construed by Missouri courts under comparable fact situations involving ordinances attempting to impose "license fees" on business occupations, without specific charter authority, as plaintiff has undertaken in this case.

Reverting to Section 71.610, we take note of its historical background. Enacted initially in 1889, (as Section 1900), its passage was intended to curb attempts by certain municipal authorities to appropriate and exercise power to license and tax "all other business, trades, avocations or professions whatever" in addition to those specifically named in the city charter—all contrary to what had previously been the long established and well recognized legal policy of the state. See City of St. Louis v. Laughlin, 49 Mo. 559 decided in 1872, wherein Judge Wagner wrote that "the state might delegate the authority, (to impose occupation license taxes) but it should be done in clear and unambiguous terms" and that "to give the words 'all other business, trades, avocations or professions' the meaning contended for (under the rule of *ejusdem generis*) would give the city the power of taxation by license over nearly every laborer. I am of the opinion that

the Legislature had no such intention in view." In Siemens v. Shreeve, 317 Mo. 736, 296 S.W. 415, the Supreme Court thoroughly traces the judicial history and legal philosophy which led up to enactment of present Section 71.610. Approving the above quoted expression of Judge Wagner in St. Louis v. Laughlin, the Siemens opinion states: "The clear vindication of the salutary and generally recognized policy of the law that any delegation of the taxing power must be in clear and unambiguous terms jealously guarded and strictly construed has always been adhered to in this state. (citing cases). The Laughlin decision was a judicial expression of the policy of the law with reference to this particular exercise of the taxing power * * *". The Siemens opinion then directs attention to two later decisions which had deviated from and corrupted the policy declared in the Laughlin case by applying the doctrine of *ejusdem generis* so as to extend the city's power to impose license taxes to "all other business, trades, avocations, or professions whatever", whether or not specially named in the charter.[1] Obviously considering those two decisions to be the predisposing cause for the legislature to enact Section 71.610, in order to restore, by statute, the policy of the law that had been declared in the Laughlin case, the Siemens opinion concludes:

"From the foregoing it appears that the city of St. Louis, under its constitutional grant of power to frame a charter had by a blanket clause arrogated to itself the power to impose a tax on all occupations, professions, and pursuits, whether specially named or not, and what the city of St. Louis had done every other city, whether chartered under constitutional grant of power or by legislative enactment, would seek to do. Such was the situation after the Bowler decision in 1887, and it was evidently for

---

[1] See City of St. Louis v. Herthel, Mo.Sup., 88 Mo. 128, decided in 1885, holding that the occupation of an architect though not specially named in the charter was taxable; also City of St. Louis v. Bowler,

94 Mo. 630, 7 S.W. 434, decided in 1887, where it was held that sewing machine agents likewise not specially named, were included within the license taxing power of the city.

the purpose of checking this wholesale delegation of the taxing power through a statutory expression of a previously well-defined, salutary policy that section 1900, R.S.1889, (present Section 71.610) was enacted. It is, in effect, a legislative finding and declaration of policy that, unless the business avocation, pursuit, or calling sought to be taxed by the municipal corporation is specially named as taxable in the charter, or unless such power is conferred by statute, the power to tax is not clearly and unambiguously delegated, and therefore consistent with the general sound policy of the law, it cannot be exercised."

Our study of the cases discloses that all pertinent Missouri decisions since the enactment of Section 71.610 have, with one exception, faithfully observed the proscription of that statute and have ruled that a fee, sum, charge or tax exacted as consideration for issuance of a license to engage in a business occupation amounts to a "license tax" which the municipality has no power to impose upon any such occupation not specifically named in its charter.

The exception above noted is the case of Ex parte Smith, 231 Mo. 111, 132 S.W. 607, decided in 1910 by Division Two of the Supreme Court. The question considered was whether the City of St. Louis had power, in the absence of specific charter authorization, to enact an ordinance requiring a license to engage in the occupation of plumbing, requiring license applicants to pass an examination, and exacting a license fee of $1.00 per year. The city's charter contained no specific grant of authority to license, tax or regulate the occupation of plumbing, but the city claimed to have such authority under a blanket charter clause granting the power "to license, tax and regulate all other business, trade, advocations or professions whatsoever." The court upheld the validity of the ordinance on two grounds. First, that the doctrine of *ejusdem generis* applied so as to include the business of plumbing. Second, that under its police power to regulate and

license the plumbing business, the city had authority to exact the "fee" of $1.00 for the license required. In defense of the latter ruling, the court said, "That the fee in this case is a mere license fee, being $1 per year, we think is too obvious for any discussion. It is not a tax in any sense of the word nor is it intended as such. Its amount on its face demonstrates that it is simply enough to cover the proper charges for the issuing of the license certificate. The ordinance was not intended as a revenue measure, and hence section 5256 [6256] Rev.St.1899—(present Section 71.610)—has no application to it." *Both rulings were later repudiated by the Supreme Court, en banc, as we shall hereinafter chronicle.*

In point of time, the next case involving essentially the question now before us was Pierce City v. Hentchel, Mo., 210 S.W. 31, finally decided by Division Two of the Supreme Court in 1919. Pierce City had undertaken by two ordinances to make it unlawful to engage in business, either as a plumber or an electrician, without obtaining a license. Section one of the ordinance relating to electricians provided:

"That no person, firm or corporation shall engage in the business of installing electric lights or electric power of any sort in the city of Pierce City, or wire any house or building or other premises for like purposes, without having first procured a license from the city therefor, and shall pay for each license the sum of ten dollars ($10) per annum, such license to expire with the calendar year in which the same is issued."

The first section of the ordinance relating to plumbers was in identical substance, and in essentially the same language. Each ordinance, in ensuing sections, prescribed regulations pertaining to the conduct of the subject business occupation. Notwithstanding the ordinances were, in part, regulatory in their purposes, the court viewed them "as laws exercising the power to tax occupations" and ruled that in view of Section 9580 R.S. 1909 (present Section 71.610) the city had no authority to require either

plumbers or electricians to pay the sum of $10.00 as an occupation license tax in order to engage in their respective occupations and held the ordinances to be void. As explanatory of its ruling, the court said: "This statute must be given some effect. It is not meaningless. It had its purpose. That purpose was to limit the power to municipalities to tax occupations. This power to tax cannot (under this statute) be exercised unless the trade or occupation is specifically mentioned in the city charter."

The leading and controlling authority on the present appeal issue is the case of Keane v. Strodtman, 323 Mo. 161, 18 S.W. 2d 896, decided in 1929, wherein the Supreme Court, *en banc*, criticized and directly contradicted the two previously mentioned rulings in Ex parte Smith. In the Keane case the court again had to determine the validity of a municipal ordinance which undertook both *to license* (and exact a fee therefor) and *to regulate* a business occupation, to-wit: an ordinance of the City of St. Louis requiring persons engaged in the business of erecting, maintaining or repairing awnings to procure a license therefor and "to pay" for that privilege the sum of $100.00 per year. As a further prerequisite to issuance of the license, the applicant was required to furnish a $5,000.00 bond, subject to the city's approval, to indemnify the city from liability arising out of his awning business operations. Additional provisions of the ordinance were regulatory, in that they required periodic inspection by the building commissioner and authorized revocation of the license if the licensee failed to erect, maintain and repair awnings in the manner specified by terms of the ordinance. The case arose before the court *en banc* as an original action in habeas corpus, upon petition of Keane who had been arrested, convicted and jailed on the charge of engaging in the awning business in violation of the ordinance. Asserting that his restraint was unlawful, the petitioner contended for his release from custody on the ground (among others asserted) that the ordinance

was invalid because the city had no authority to impose a license tax upon his awning business contrary to the terms of Section 8702 R.S.1919 (present Section 71.610). Sustaining that contention for the stated reason that "the absence of the underlying and all-important condition that authority for its enactment does not appear in the charter, as required in Section 8702, supra", the court ordered petitioner's discharge. In rejecting the doctrine of *ejusdem generis* which Division One had accepted in the Smith case, the court said:

"The doctrine of ejusdem generis is invoked to authorize the imposition of this tax. Primarily, the purpose of this doctrine is to ascertain the intention of the lawmaker. Ex parte Smith, 231 Mo. 111, 119, 132 S.W. 607. No difficulty need arise as to the purpose of the controlling statute (section 8702 supra), which was to place a definite limit upon, not only the legislative branch of the municipal government in the imposition of taxes upon callings, but to require that the subjects of such imposition be named in the charter. *Thus hedged about there is no authority for the invoking of the doctrine of ejusdem generis.* * * * (I)n justice to the rules of construction it could never have been regarded as a precedent to sustain the conclusion that the word 'plumber' was ejusdem generis with the other callings then mentioned in the charter." (Italics supplied.)

And, disapproving the ruling of Division One in the Smith case that a "nominal" $1.00 fee required for an occupation license did not amount to a "license tax", the court further stated that "Section 8702 * * * which had been enacted in 1889, and was in force at the time of the rendering of that opinion * * * should have been held as limiting the legislative action of the city assembly in enacting the ordinance then under consideration."

The latest case of direct relevance is Krug v. Village of Mary Ridge, Mo.App., 271 S.W.2d 867. Decided by the St. Louis

Court of Appeals in 1954, it is factually almost identical with the instant case. Plaintiff Krug, a hotel operator, brought the action seeking judicial declaration that two zoning ordinances, and a third ordinance which provided for licensing and regulating the business in which he was engaged, were invalid. Only the latter ordinance (No. 54) has bearing upon the present appeal question. By its terms, that measure undertook to license, tax and regulate hotels, motels and tourist courts within the Village of Mary Ridge. Plaintiff challenged its validity on the ground that the village had no authority in the premises. The trial court ruled all issues against plaintiff. Upon appeal, the reviewing court made two significant determinations. First, pointing out that the specific statutory grant of legislative power to towns and villages to license, tax and regulate 39 variously named occupations and businesses (Section 80.090) did not mention hotels, motels and tourists courts, the court stated: "It is therefore clear that the village has no power to impose a *license tax* on hotels, motels and tourists courts because of Section 71.610 * * *,".

As for the regulatory features of the Mary Ridge Ordinance No. 54, (measures requiring (1) iron fire escapes, red lights and signs, and prohibiting storage of inflammables, and (2) requiring adequate ventilation, proper plumbing practices and facilities, and the observance of sanitary standards), the court found them to be valid and enforcible. This, because they were clearly referable to and authorized by express charter provisions, to-wit, paragraph (10) of Section 80.090 which empowered the village "To prevent the introduction and spreading of contagious diseases" and by paragraph (12) of Section 80.090, which gave it the power "To prevent and extinguish fires". In the court's opinion, those regulations were appropriately enacted "in the necessary exercise of the police power" so delegated by the cited sections of the statutes, which constituted the village's charter. The court finally ruled the case

as follows: "We therefore conclude that while the village had the power to adopt Sections * * * relating to sanitation, cleanliness, and the prevention and extinguishment of fires, *it had no power to adopt Sections * * * thereof pertaining to license fees.*" (Emphasis supplied.)

 Plaintiff city has nothing to offer as direct case authority to counter the positive rulings in Pierce City v. Hentchel, Keane v. Strodtman and Krug v. Village of Mary Ridge, which, in combined effect, have declared it to be the law of this state that for a city to require the payment of *any sum of money whatsoever, nominal or otherwise,* for issuance of an occupation license, as prerequisite to the lawful pursuit of a business vocation, constitutes the imposition of a "license tax" within contemplation of Section 71.610. The city relies solely upon the general rule typically enunciated in textbooks to the effect that a license fee is a tax when imposed solely for revenue purposes, but not when exacted for purposes incidental to "regulation" in the exercise of lawfully delegated police power. Plaintiff cites three Missouri cases which echo that rule but do not factually touch the question at hand.

The only case cited by plaintiff which involves a municipal ordinance requiring an occupation license is Moots v. City of Trenton, 358 Mo. 273, 214 S.W.2d 31. Even that case serves to emphasize the force of Section 71.610 as a rigid bar to the imposition of municipal license taxes upon vocations that are not specifically mentioned as permissible subjects of such taxation. The sole question decided in Moots (other than one relating to judicial procedure) was whether the City of Trenton had statutory authority to enact an ordinance requiring payment of an annual "license fee" of $30.00 *as a revenue measure* in order to lawfully operate a coin actuated music machine. No provisions for regulation were included. After directing attention to Section 71.610 and pointing out that music machines were not specifi-

**618**

cally named in the list of taxable business pursuits mentioned in the statute as taxable, the court ruled that the licensing provision was solely a revenue measure and that it was not enacted in the exercise of the police power and thus held the ordinance to be invalid. Apparently plaintiff has cited the Moots case because the opinion contains a quotation from 33 Am.Jur., Sec. 19, p. 340, which states, "where the fee is imposed for the purpose of regulation, and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper, imposed by virtue of the police power; * * *". That statement was entirely gratuitous and has no relevance to the factual situation before the court, because the ordinance in question had not undertaken to regulate the operation of music machines. The opinion is in no sense supportive of Odessa's position.

Plaintiff also cites Wilhoit v. City of Springfield, 237 Mo.App. 775, 171 S.W.2d 95. The subject matter there reviewed was not an occupation licensing ordinance, and the case is authority only for the proposition that a city of the second class, by reason of its delegated police power to regulate parking in its streets, has authority by ordinance to install and regulate the use of parking meters and to exact meter "fees" for parking privileges, and that the ordinance was a "regulatory measure"—not a "revenue measure". That conclusion was responsive to a clear, positive showing, on the face of the ordinance itself, and by voluminous evidence, that moneys derived from meter fees were not for general revenue purposes, but would be deposited separately and constitute a special fund "to cover cost of purchase, inspection, installation, operation, control, maintenance and use of the parking meters provided herein and the cost of services and regulating the parking of vehicles in the parking meter zones created hereby and other office and safety equipment and expense." No showing of like nature has been made in the present case, as we shall hereinafter more fully explain.

The third of plaintiff's cited cases is Kansas City v. School District of Kansas City, 356 Mo. 364, 201 S.W.2d 930, where the court ruled the plaintiff municipality was entitled to recover "reasonable inspection fees" from defendant school district, another body politic, to cover expenditures incurred in the city's inspection of boilers, smokestacks, fuel-burning facilities and elevators, pursuant to a police measure regulating those facilities. The decision has no material bearing on the present appeal issue.

■ Even if Missouri courts had not spoken on the instant issue in Pierce City, Keane and Krug, it would nevertheless still be our conclusion from the record before us that the Odessa ordinance, insofar as it requires an occupation license and payment of a licensee fee, is an attempted revenue measure in that it purports to impose a license tax which is expressly prohibited by Section 71.610. Such is our view in this case notwithstanding the remaining portions of the ordinance are obviously regulatory in nature. This determination is necessarily made solely on the basis of the interpretation we place on the ordinance, because there is no evidence *aliunde* relative to the intended purpose, use or disposition of the revenues derived from the "license fees" imposed. In examining the measure for its meaning and effect we have kept in mind the frequently repeated rule that statutes and ordinances imposing licenses and business taxes are to be construed liberally in favor of the citizen and strictly against the authority attempting to tax. City of St. Charles v. Union Electric Co. of Missouri, Mo.App., 185 S.W.2d 297. City of Springfield v. Mecum, Mo.App., 320 S.W.2d 742.

The language of Section 3 which requires the license in question is highly significant in that it provides, "it shall be unlawful to establish, maintain, or operate, any trailer park * * * without first having obtained a license therefor." Thus it is apparent that by obtaining the license required (for which the applicant must pay

at least a $50.00 fee as required by Section 5) that individual is granted the special privilege, not enjoyed by other persons generally, of lawfully engaging in the trailer park business—something which he could not do without the license and without paying the fee. Therefore, in the absence of any further explanatory provision in the ordinance to show for what purpose the $50.00 fee was required or for what use it was intended, we believe that it was exacted as a *consideration* paid for the privilege granted by the license, and that consequently the license fee provision is a revenue measure. "A 'license fee' or, as it is otherwise called, a 'license tax', the two terms generally being regarded as synonymous, since the requirement of payment for a license is only a mode of imposing a tax on the licensed business, is the sum exacted for the privilege of carrying on a particular occupation or business." 53 C. J.S. Licenses, § 1c, p. 446. Also see State v. Parker Distilling Co., 236 Mo. 219, 237 Mo. 103, 139 S.W. 453, for a full discussion of the nature and purpose of a "license."

Other than those set out in Section 3 and Section 5, we do not find any allusion to the subjects of "license" or "license fee" in the entire ordinance. There is no provision that the license fees be placed or retained in any fund other than the general revenue fund of the city, or that those moneys be used for any purpose in connection with the subject matter of the ordinance. No provision is made by the ordinance for any inspection by the city, nor has the city offered any evidence whatsoever of any proposed inspection or regulation by the city or any official on its behalf. In short, there is no evidentiary basis to support an inference or finding that the license is merely incidental to the regulations it prescribes.

We rule that the ordinance provisions requiring a license and the payment of a license fee in order to operate a trailer park in the City of Odessa are invalid and that the trial court properly dismissed the five

actions. To hold otherwise would nullify Section 71.610 and give cities power to subject any business to a license tax by merely providing for some regulation in a licensing ordinance.

The judgment is affirmed.

All concur.