Ex parte GEORGE M. SIEMENS, Petitioner, v. WILLIAM A. SHREEVE, Chief of Police, and JAMES O'ROURKE, Superintendent of Municipal Farm, of Kansas City.—296 S. W. 416.

Court en Banc, June 27, 1927.

**1. TAXATION: Upon Occupations.** A license tax imposed upon architects is an attempted exercise of the taxing power, and not a police regulation.

2. **POWER TO TAX: By City: Delegation.** A city has no inherent power to tax, but the power may be delegated to the city by the State by constitutional provisions or statutory enactments, and the power thus delegated may be expressly granted or necessarily implied, but in case of doubt it is not granted.

3. **CITY CHARTER: Framed by City: Conformity with Constitution: Restriction upon Power.** A charter framed by a city for itself under direct constitutional grant to do so has, within the limits contemplated by the Constitution, the force and effect of a charter granted by the Legislature when the Legislature is not restrained or restricted by constitutional provisions. But the same section of the Constitution (Sec. 16, Art. 9) which permits a city having more than one hundred thousand inhabitants to frame a charter for its own government limits the power of the city to the framing of a charter which shall be "consistent with and subject to the Constitution and laws of the State" and requires that it shall "always be in harmony with and subject to the Constitution and laws of the State."

4. ———: **Consistent with Constitution and Laws: Meaning: As Pertaining to Taxation.** The words "consistent with" used in the section of the Constitution (Sec. 16, Art. 9) authorizing certain cities to frame charters for their own government "consistent with and subject to the Constitution and laws of the State," do not import exact conformity, but mean substantial harmony. They mean that the charter thus framed shall not be inimical to the general scope of the Constitution and laws. As pertaining to the power of the city to tax, they mean that the delegation of the power must be in clear and unambiguous terms.

5. ———: ———: **Power to Tax: Subject to General Statutes.** The Constitution not only says (Sec. 16, Art. 9) "that a charter framed by a city for its own government shall be consistent with and subject to the Constitution and laws of the State" and "always be in harmony with and subject to the Constitution and laws of the State," but it also says (Sec. 1, Art. 10) that "the taxing power may be exercised by the General Assembly for state purposes, and by counties and other municipal corporations under authority granted to them by the General Assembly, for county and other corporate purposes;" and those two provisions, when read together, mean that the charter framed by the city must be consistent with and subject to statutes of general application defining the scope of the policy of the law relating to the power to tax.

6. ———: ———: ———: ———: **Architects.** Kansas City has no power under its charter to enact an ordinance imposing a license or occupation tax upon architects. The charter provision authorizing the city by ordinance "to license, tax and regulate all occupations, professions, trades, pursuits, . . . and to fix the license tax to be paid thereon and therefor" does not authorize an ordinance imposing a tax upon architects, in view of the general statute (Sec. 8702, R. S. 1919) declaring that "no municipal corporation shall have power to impose a license tax upon any business avocation, pursuit or calling, unless such business avocation, pursuit or calling is specially named as taxable in the charter of such municipal corporation, or unless such power be conferred by statute." Said statute applies to all municipal corporations, whether under general or special charter; and since architects are not specifically named in the charter, and there is no general statute authorizing the city to tax them, a city ordinance which attempts to impose a tax upon them is void.

Corpus Juris-Cyc. References: **Architects**, 5 C. J., Section 3, p. 256, n. 6. Licenses, 37 C. J., Section 16, p. 176, n. 23; Section 25, p. 182, n. 5. Municipal Corporations, 43 C. J., Section 150, p. 165, n. 99; Section 310, p. 296, n. 34; 44 C. J.. Section 4271, p. 1261, n. 91; p. 1262, n. 97. **Taxation**, 37 Cyc., p. 725, n. 37, 40.

*Habeas Corpus.*

PETITIONER DISCHARGED.

*Milton Schwind* and *R. E. Ball* for petitioner.

(1)   The city had no power to impose a tax by ordinance on the occupation or profession of architects. The statute specifically denies this power to the city except under conditions which do not exist in this case. Kansas City Charter of 1908 specially names many occupations on which the city shall have power to impose an occupation tax, but does not name the occupation or profession of architect. Sec. 8702, R. S. 1919; Charter 1908, Art. III, sec. 1. (2)   The ordinance here in question is a revenue measure and the statute (Sec. 8702, R. S. 1919) is therefore a fixed criterion of its validity. City of St. Louis v. Spiegle, 75 Mo. 145; City of St. Charles ex rel. v. Schulte, 264 S. W. 654; Pierce City v. Hentschell, 210 S. W. 33; Ex parte Smith, 231 Mo. 111, 132 S. W. 607. (3)   Every doubt as to the city's power to tax must be resolved against the power and in favor of the citizen. Heller v. Stremmel, 52 Mo. 311; City of St. Louis v. Dreissoerner, 243 Mo. 217; City of Trenton v. New Jersey, 262 U. S. 182. (4)   The comprehensive provision in the charter purporting to grant power to tax unnamed occupations is nugatory. Such provision must be held void. State ex rel. Koeln v. Lesser, 237 Mo. 310.

*John T. Barker* and *Wm. H. Allen* for respondents.

(1)   The city was empowered by its charter to enact the ordinances. Charter 1908, Art. III, sec. 1, cl. 4; Viquesney v. Kansas City, 305 Mo. 489; City of St. Louis v. Baskowitz, 273 Mo. 543; Constitution of Missouri, Art. 9, sec. 16; Art. 10, sec. 10. (2)   The provisions of Art. III, sec. 1, clause 4, of the Charter of Kansas City, 1908, is broad enough to include the profession of architect. Viquesney v. Kansas City, 305 Mo. 489; St. Louis v. Baskowitz, 273 Mo. 565; St. Louis Gunning Co. v. St. Louis, 235 Mo. 99. (3)   The profession of "architect" is *ejusdem generis* with lawyers, doctors, dentists and artists. St. Louis v. Baskowitz, 273 Mo. 558; St. Louis v. Herthel, 88 Mo. 128. (4)   The provision "to license, tax and regulate all occupations, professions, trades, pursuits . . . not heretofore enumerated of whatever name or character, like or unlike, and to fix the license tax to be imposed thereon or therefor" is sufficient to include the profession of architect. St. Louis v. Baskowitz, 273 Mo. 565, 203 S. W. 817; Hallbruegger v. St. Louis, 302 Mo. 593.

ATWOOD, J.—This case comes to the writer on reassignment. Petitioner, George M. Siemens, is an architect residing in Kansas City, Missouri, and there practicing his profession. On May 20, 1926, he was convicted in the municipal court of said city on an information charging him with the violation, on or about May 19, 1925, of a city ordinance imposing a license or occupation tax on architects. Refusing to pay the fine imposed by the court he was committed as by said ordinance provided, whereupon he filed petition for writ of *habeas corpus* in this court. Respondents waived the issuance of a formal writ and made return, and petitioner waived the production of his body before the court.

In their return respondents admit the detention of petitioner and seek to justify the same by pleading the conviction aforesaid, and showing that it was had under Ordinance No. 38141 of Kansas City, approved July 1, 1920, as amended by Ordinance No. 45745, approved June 6, 1923, which, among other like provisions relating to other occupations, imposes a tax as follows:

''The fee for such license shall be as follows: Architects employing not more than one draftsman, one year, $25. Employing more than one draftsman, one year, $50. . . .''

Petitioner filed answer to the return in which he invokes the due process clause, Section 1 of the Fourteenth Amendment, of the Constitution of the United States; also Section 4, Article II, of the Constitution of Missouri, which provides that all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry; and further urges that the ordinance is illegal and void because the city charter of 1908, which was effective from its adoption until April 10, 1926, in limiting and defining the city's power, did not specially name the occupation, calling or profession of an architect as taxable by said city; that said city is not authorized by any general statute of Missouri to tax the same, and that said ordinance insofar as it attempts or pretends to impose a license tax upon architects as a class, or upon this petitioner as an architect, is void, illegal and invalid, and of no force or effect, and is in direct violation of the terms of Section 8702, Revised Statutes 1919, which provides:

''No municipal corporation in this State shall have the power to impose a license tax upon any business avocation, pursuit or calling, unless such business avocation, pursuit or calling is specially named as taxable in the charter of such municipal corporation, or unless such power be conferred by statute.''

Petitioner contends that the above statute, under the provisions of Section 16 of Article IX of the Constitution, and Section 1, Article III, of the city charter, supersedes said ordinance and renders it invalid; while it is the position of respondents that said ordinance was enacted pursuant to city powers defined in the fourth clause of

Section 1, Article III, of Kansas City's charter framed in 1908 under Section 16 of Article IX of the Constitution of 1875, and is not affected by the provisions of the above statute. The parts of Section 1, Article III, of the charter which are here referred to are as follows:

"Sec. 1. All powers conferred upon the city by the charter or the general laws of the State of Missouri shall be exercised by ordinance, except as otherwise provided in this charter, and the mayor and common council shall have power and authority, by ordinance, not inconsistent with the Constitution and laws of this State, and subject to the limitations expressed in this charter:" . . .

"Fourth: To license, tax and regulate manufacturers" (Here follow many specially named occupations ending with "common carriers," architects not being included.)

"And to license, tax and regulate all occupations, professions, trades, pursuits, corporations and other institutions and establishments, articles, utilities and commodities, not heretofore enumerated, of whatsoever name or character, like or unlike, and to fix the license tax to be paid thereon or therefor; and in the exercise of the foregoing powers, to divide the various occupations, professions, trades, pursuits, corporations and other institutions and establishments, articles, utilities and commodities into different classes." . . .

It is conceded that the license tax here sought to be imposed is an attempted exercise of the taxing power, and not a police regulation. A city has no inherent power to tax. This power rests primarily in the State and may be delegated by constitutional provision or by statutory enactment. The authority to tax must be expressly granted or necessarily incident to the powers conferred, and in case of doubt the power is denied. [7 McQuillin on Municipal Corporations (Suppl.) sec. 987.]

The taxing power here sought to be exercised is not conferred upon Kansas City by any statute. If authority therefore exists it must be found in the charter.

A city framing its own charter under the Missouri Constitution has been declared by the highest judicial authority in the land to be in a very just sense an *imperium in imperio,* and to the prescribed extent this is true. [St. Louis v. Western Union Tel. Co., 149 U. S. 465, l. c. 468; Dillon on Munic. Corp. (5 Ed.) 112.] A charter framed by a city for itself under direct constitutional grant of power so to do has, within the limits therein contemplated, the force and effect of one granted by an act of the Legislature when unrestrained by constitutional provision. [Morrow v. Kansas City, 186 Mo. 675.] Important restraining provisions, however, appear in clauses of Section 16 of Article IX of the Constitution of 1875, the very section that permits cities having a population of more than one hundred thousand inhabitants to frame charters for their "own government"

and under which this charter was framed, limiting the exercise of this power to the formation of such charters only as shall be "consistent with and subject to the Constitution and laws of the State," and shall "always be in harmony with and subject to the Constitution and laws of the State." Both the grant and the limitation must be given effect. If the limitation is construed to mean that the charter must be consistent with every provision of the Constitution and every law of the State then the limitation simply nullifies the grant. [Kansas City v. Oil Co., 140 Mo. 458, 1. c. 470.] On the other hand, to treat the charter as "out of, and beyond, all legislative influence," would be to nullify the express constitutional limitation. [State ex rel. Kansas City v. Field, 99 Mo. 352, 1. c. 355.] Either construction would be extreme and unthinkable. Even if the imposition of this license tax be a matter purely local and municipal in character, as to which we express no opinion, we take it that any attempted charter grant of such power is subject to the above restraining clauses of the Constitution. The question is, therefore, whether or not Kansas City in framing its charter in 1908 in the face of and in apparent conflict with above Section 8702, Revised Statutes 1919, first appearing as Section 1900, Revised Statutes 1889, and ever since continued in full force and effect, transcended the scope of its powers thus granted and limited by the Constitution.

The above constitutional limitation was construed by Judge GANTT speaking for this court en banc in Kansas City v. Bacon, 147 Mo. 259, 1. c. 272: " 'Consistent with' does not import exact conformity, but means substantial harmony with the principles of the Constitution and the general laws of the State."

Again, in Brunn v. Kansas City, 216 Mo. 108, 1. c. 117, Judge LAMM construed these constitutional provisions to mean that charters thus framed should not be "inimical to the general scope of our Constitution and laws."

We look then to "the general scope of the policy of our Constitution and laws" pertaining to this particular exercise of the taxing power. As early as the year 1848 this court held that the State had power to tax all professions. [Simmons v. State, 12 Mo. 268.] In City of St. Louis v. Laughlin, 49 Mo. 559, 1. c. 562, decided in 1872, Judge WAGNER held that "the State might delegate the authority, but it should be done in clear and unambiguous terms." In this case a provision of the charter of the city of St. Louis expressly conferred upon the mayor and city council power to tax a number of specially named occupations, those named being followed by the sweeping words, "and all other business, trades, avocations or professions whatever." Judge WAGNER, holding that the rule of *ejusdem generis* applied so as to exclude the profession of law which was not specially named, said: "To give the words 'all other busi-

ness, trades, avocations or professions' the meaning contended for would give the city the power of taxation by license over nearly every laborer. I am of the opinion that the Legislature had no such intention in view."

This clear vindication of the salutary and generally recognized policy of the law that any delegation of the taxing power must be in clear and unambiguous terms jealously guarded and strictly construed has always been adhered to in this State. [Am. Express Co. v. St. Joseph, 66 Mo. 675; Aurora v. McGannon, 138 Mo. 38; St. Louis v. McCann, 157 Mo. 301; In re Sanford, 236 Mo. 665.]

The Laughlin decision was a judicial expression of the policy of the law with reference to this particular exercise of the taxing power and was before the framers of the Constitution of 1875. When by that instrument they granted cities having a population of more than one hundred thousand inhabitants the power to frame charters for their "own government," they also provided Section 1 of Article X, not found in the previous Constitution of 1865, which reads as follows: "The taxing power may be exercised by the General Assembly for state purposes, and by counties and other municipal corporations, under authority granted to them by the General Assembly, for county and other corporate purposes."

Evidently, therefore, when the limitation was written in Section 16 of Article IX that such charters should be "consistent with and subject to the Constitution and laws of the State" and "always be in harmony with and subject to the Constitution and laws of the State," it was intended that they should be consistent with and subject to statutes of general application defining the scope of the policy of the law with reference to the all important and jealously-guarded power to tax.

That Section 8702, Revised Statutes 1919, first appearing as Section 1900, Revised Statutes 1889, is the consistent outgrowth and statutory expression of the policy announced in the Laughlin case, is apparent from an examination of the trend of special charter provisions and judicial decisions preceding its enactment. In 1885 a charter provision of the city of St. Louis was construed which conferred power upon the mayor and assembly to license, tax and regulate certain named occupations and professions, among which were those of lawyers, doctors, dentists, etc., and immediately following the occupations named were the words: "and all other business trades, avocations or professions whatever." The court held in city of St. Louis v. Herthel, 88 Mo. 128, decided in 1885, that the occupation of an architect though not specially named was included. On this point the decision reads (l. c. 130): "The maxim '*expressio unius est exclusio alterius*' is not to be so applied that the city is to be held powerless to tax any calling, not expressly named in its charter by

its proper name. We think that architects are, for the purpose of construction here, to be held as *ejusdem generis* with lawyers, doctors, dentists and artists, as exercising a profession of technical character, for the useful exercise of which long and careful study, as well as some special experience, is required."

In City of St. Louis v. Bowler, 94 Mo. 630, 1. c. 632, decided in 1887, a provision of the charter of the city of St. Louis was construed which authorized the mayor and assembly: "To license, tax, and regulate . . . agents . . . real estate agents and brokers, financial agents and brokers . . . mercantile agents . . . insurance agents . . . and all other business, trades, avocations, or professions whatever . . . to license, tax, regulate, or suppress all occupations, professions, and trades not heretofore enumerated, of whatever name and character." In holding that a sewing machine agent was included, though not specially named, the court said: "This language is so very comprehensive that no necessity exists to invoke the rule of *ejusdem generis* in the case at bar, if the language employed in the concluding words is to have accorded to it its usual signification. . . . In the case before us, it will be noticed that the term 'agents' is employed as a descriptive word, a word of designation, and embraces *all* agents. This case does not, therefore, really present the feature where general words follow prior particular words, and if it did, the closing words of the section show that it was clearly intended by the charter to confer authority upon the city as broad as the closing words of the section already quoted."

From the foregoing it appears that the city of St. Louis, under its constitutional grant of power to frame a charter, had by a blanket clause arrogated to itself the power to impose a tax on all occupations, professions and pursuits, whether specially named or not, and what the city of St. Louis had done every other city, whether chartered under constitutional grant of power or by legislative enactment, would seek to do. Such was the situation after the Bowler decision in 1887, and it was evidently for the purpose of checking this wholesale delegation of the taxing power through a statutory expression of a previously well-defined, salutary policy that Section 1900, Revised Statutes 1889, was enacted. It is, in effect, a legislative finding and declaration of policy that unless the business avocation, pursuit or calling sought to be taxed by the municipal corporation is specially named as taxable in the charter, or unless such power is conferred by statute, the power to tax is not clearly and unambiguously delegated and therefore, consistent with the general sound policy of the law, it cannot be exercised. We think this statute applies to all municipal corporations whether under general or special charter. We inferentially so held in Pierce City v. Hentschel, 210 S. W. 31, 1. c.

32; Kansas City v. Grush, 151 Mo. 128, l. c. 134; and Viquesney v. Kansas City, 305 Mo. 488, l. c. 498. Such was the direct and unequivocal ruling of the Kansas City Court of Appeals in Kansas City v. Lorber, 64 Mo. App. 604, l. c. 607. In Viquesney v. Kansas City, 305 Mo. 488, and City of St. Louis v. Baskowitz, 273 Mo. 543, cases especially relied upon by respondents, this particular question was neither raised nor considered, and hence they are not controlling authorities in this case.

For the reasons above stated we rule that Section 8702, Revised Statutes 1919, controls as against the general provision of Kansas City's charter adopted in 1908 under which it is sought to tax petitioner. This being decisive of the case we deem it unnecessary to rule upon other questions raised.

It follows that petitioner should be discharged, and it is so ordered. All concur, except *Gantt, J.,* not sitting.