Ex Parte Michael J. Keane, Petitioner, v. George W. Strodtman, Sheriff, Respondent.—18 S. W. (2d) 896.

Court en Banc, June 29, 1929.

162

*Hugo L. Weismantel* for petitioner.

*Julius T. Muench* and *Oliver Senti* for respondent.

WALKER, J.—This is a proceeding in Habeas Corpus to test the validity of an ordinance of the city of St. Louis, No. 35536, approved January 10, 1927, requiring persons engaged in the business of erecting, maintaining or repairing awnings which project over public highways, to procure from the city of St. Louis a license therefor and to pay for that privilege the sum of $100 per year.

The petitioner refused to comply with this ordinance and was arraigned, tried and convicted in the Court of Criminal Correction and fined $100. In default of payment of the same he was taken into custody by the sheriff, and pending his commitment he made application for this writ. Upon the making of this application the formal issuance of a preliminary writ and the production of the body of the petitioner were waived by a stipulation of the parties.

As a prerequisite to the granting of this license, in addition to the applicant stating his name and address, he is required to accompany his application with a bond for five thousand dollars to be approved as to form by the city counselor and as to the sufficiency of the sureties by the city comptroller. The purpose of this bond, as stated in the ordinance, is to indemnify the city against all claims, judgments or suits caused by the erection, maintenance or repair of any awnings erected, maintained or repaired by such applicant.

Upon a compliance with these conditions and the payment to the collector of the sum of $100 a license is to be issued to the applicant for a period of one year from its date.

Subsequent sections of the ordinance require an inspection from time to time of such awnings by the building commissioner and authorize a revocation of the applicant's license upon his failure to erect, maintain and repair such awnings as required by the ordinance; the term, public highway, as used in the ordinance is declared to include the sidewalks as well as the main roadways, and a violation of the ordinance is declared to be a misdemeanor, punishable by a fine of not less than five dollars nor more than five hundred dollars for each day's violation.

The petition, after the formal general allegations as to the petitioner's wrongful and unlawful arrest and detention and his trial and conviction for a violation of the ordinance, alleges as grounds for the issuance of this writ and his discharge from custody that he is engaged in the awning business in the city of St. Louis, and that the alleged ordinance under which he was fined and imprisoned is an attempt by the city of St. Louis to regulate and license those engaged in maintaining, erecting and repairing awnings; that the charter of the city of St. Louis does not specifically give the city the right to tax and regulate those engaged in the awning business; that Section 8702, Revised Statutes 1919, prohibits the taxing of any business, avocation or pursuit not mentioned in the charter. That said Ordinance No. 35536 is null and void and of no force and effect in that it is violative of Section 53, Clauses 26 and 32, Article IV, of the Constitution of the State of Missouri; that it is also violative of the provisions of the Fourteenth Amendment to the Constitution of the United States.

The sheriff's return to the writ sets out the ordinance *in haec verba* and avers he detains and holds the petitioner on a commitment under a judgment of the St. Louis Court of Criminal Correction, finding and adjudging him guilty of a violation of the ordinance. Other conventional allegations usually made in a return of this character are included, as required by Section 1891, Revised Statutes 1919.

The formal allegations of the return as to the detention of the petitioner are not negatived but, as authorized by the statute, Sec-

166

tion 1903, Revised Statutes 1919, facts are alleged to show that his detention is unlawful.

I. It is the contention of the petitioner that the power of the city of St. Louis to impose a license tax upon persons engaged in business therein is limited by the terms of the statute (Sec. 8702. R. S. 1919), as therein provided. That section is as follows:

"No municipal corporation in this State shall have the power to impose a license tax upon any business, avocation, pursuit or calling, unless such business avocation, pursuit or calling is specially named as taxable in the charter of such municipal corporation, or unless such power be conferred by statute.".

A comprehensive list of the vocations upon which license taxes may be imposed is contained in Article XX of the Charter of 1914 of the City of St. Louis. It may be said to alphabetically run the gamut of human activity, so far as the designation of callings is concerned upon which licenses are expressly authorized to be imposed. This enumeration, however, does not include those engaged in the business of erecting, maintaining or repairing awnings. It remains to be determined, therefore, whether the absence of this enumeration precluded the adoption and the subsequent enforcement of this ordinance. Or, in the absence of such enumeration, did the supplemental clause to Article XX authorize the adoption of the ordinance and the exercise of the power therein granted. That clause is as follows: "The foregoing enumeration shall not be taken to affect or impair the general power of the city to impose license taxes upon any business, vocation, pursuit or calling or any class or classes thereof now or hereafter not prohibited by law."

By its terms the limitation of Section 8702, supra, is made applicable to all municipal corporations. We have so held, not only in regard to the right to tax by cities organized pursuant to the power conferred upon them by the Constitution, as in the cases of St. Louis and Kansas City, but also in cities organized under the statute. [St. Louis v. Baskowitz, 273 Mo. 543, 554, and cases, 201 S. W. 870; Ex parte Siemens v. Shreeve, 317 Mo. 736, 742 and cases, 296 S. W. 415; Pierce City v. Hentschel, 210 S. W. (Mo.) 31, 32.]

Judge GRAVES, speaking for the court in the Hentschel case, page 33, in regard to the meaning to be given to Section 8702, supra, said:

"This statute must be given some effect. It is not meaningless. It had its purpose. That purpose was to limit the power of municipalities to tax occupations. This power to tax cannot (under this statute) be exercised unless the trade or occupation is specifically mentioned in the city charter. Not so as to ordinances purely in

the exercise of the police power. As to such, this statute is not a limitation. By its very terms it fixes its application to the taxing power and not to the regulating power under the general police power."

II. Observing, as we are required to do, the mandatory rule that the charter of the city must be consistent with and subject to the Constitution and laws of the State (Sec. 9, Art. 16, Const. Mo.); and Section 8702, constituting such a law as the Legislature was authorized to enact limiting the power of the city in the imposing of taxes; and no enumeration of the calling here in question appearing in the charter, resort must be had to the supplemental portion of Article XX of the charter to determine if the power here sought to be exercised exists.

A tax law, such as is sought to be imposed in this instance, is *in invitum*. Generally speaking this rule obtains that "the power to tax is a high governmental power and when the Legislature grants that power to another tribunal, it can only be exercised in strict conformity to the statute in which the power is granted, and departure in any material part will be fatal to the attempt to exercise it. [City of Kansas v. Railroad, 81 Mo. 285, 293; Noll v. Morgan, 82 Mo. App. 112.]

The nature of the law and the absence of the enumeration from the charter of the calling sought to be taxed, precludes the invoking of the supplemental clause of Article XX of the charter to "piece out" the power of the city in the imposition of the tax. The familiar maxim of *"expressio unius est exclusio alterius"* may also be invoked, for the maxim is never more applicable than in the construction of statutes. [Whitehead v. Cape Henry Syndicate, 105 Va. 463; Hackett v. Amsden, 56 Vt. 201, 206; Matter of Atty-Genl., 2 N. M. 49.]

Certainly where, as at bar, the statute (Sec. 8702) limits the doing of a particular thing to a prescribed manner, it necessarily includes in the power granted the negative that it cannot be otherwise done. This is the general rule as to the application of the maxim. Even more relevant under the facts in this case, is the interpretation given to it by the Kansas City Court of Appeals in Dougherty v. Excelsior Springs, 110 Mo. App. 623, 626, 85 S. W. 112, to this effect "that when special powers are conferred, or where a special method is prescribed for the exercise and execution of a power, this brings the exercise of such power within the provision of the maxim *expressio unius,* etc., and by necessary implication forbids and renders nugatory the doing of the thing specified except in the particular way pointed out."

III. The doctrine of *ejusdem generis* is invoked to authorize the imposition of this tax. Primarily, the purpose of this doctrine is to ascertain the intention of the lawmaker. [Ex parte Smith, 231 Mo. 111, 119, 132 S. W. 607.] No difficulty need arise as to the purpose of the controlling statute (Sec. 8702, supra), which was to place a definite limit upon, not only the legislative branch of the municipal government in the imposition of taxes upon callings, but to require that the subjects of such imposition be named in the charter. Thus hedged about there is no authority for the invoking of the doctrine of *ejusdem generis*. While it is true that in the Smith case, supra, it was held that the petitioner was subject to a fine for refusing to pay a plumber's license when there was no enumeration of this calling in the charter as it then existed, the action of the trial court was sustained and the petitioner remanded on the ground that the word "plumber" was *ejusdem generis* with the callings mentioned. It is evident from a careful study of that opinion that the court's conclusion that the ordinance requiring a license as a prerequisite to pursuing the calling of a plumber was not based upon the formal ground stated, viz: that "it was clearly within the powers of the city conferred upon it by its charter," but as an exercise of the city's police power. This interpretation of the opinion is based upon the fact that much of its subject-matter is devoted to an argument to sustain the fact that plumbing is promotive of better sanitation and as a consequence that it tends to preserve the health of the people. "We regard," says the court in this connection, "the business of plumbing as so intimately connected with the public health and the comfort of the citizens that there ought not to be any doubt that its regulation falls within the power of the Legislature in the exercise of its police power."

While later cases, which we have cited, overrule the ostensible ruling in the Smith case, the real reason for the conclusion reached therein has been stated to demonstrate the fact that in justice to the rules of construction it could never have been regarded as a precedent to sustain the conclusion that the word "plumber" was *ejusdem generis* with the other callings then mentioned in the charter. In addition, no mention is made in the opinion (or the briefs of the parties), of Section 8702, supra (then Sec. 9580, R. S. 1909), which had been enacted in 1889, and was in force at the time of the rendering of that opinion, and should have been held as limiting the legislative action of the city assembly in enacting the ordinance then under consideration.

IV. It is contended that the ordinance is invalid in that it discriminates between those who engage in erecting, maintaining and re-

pairing awnings over public highways and those engaged in the business of erecting awnings for private parties and not over public highways. The purpose of the ordinance was the public safety. It is evident that consideration is involved in the regulation of the business on public streets; but does not exist where that character of work is done for private parties.

In Hawkins v. Smith, 242 Mo. 688, it was held that a statute making operators of mines liable for damages sustained by a servant, by reason of the negligence of a fellow-servant, was not invalid, because it applied to producing mines only. The rule by which the courts are guided in reviewing the reasonableness of classes into which things are divided by the Legislature is stated in that case as follows:

"It is also argued that the effect of the use of the word 'producing' in the first section of the act (Sec. 5440, R. S. 1909) is to restrict the class affected to mines producing mineral and to exempt from the liabilities imposed prospectors and others whose mines have not yet reached the point of production, and that such exemption denies the appellants the equal protection of the laws, and is violative of the constitutional inhibition against class legislations.

"The conclusion announced does not follow from the premise laid down. Undoubtedly the Legislature possesses the power to 'select and classify objects of legislation,' and just as undoubtedly may exercise a wide discretion in the exertion of that power.

" 'There is, therefore, no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities. And necessarily so. In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things.' It is 'sufficient to satisfy the demand of the Constitution if a classification is practical and not palpably arbitrary.' [Louisville & Nashville Railroad v. Melton, 218 U. S. 1. c. 55.] 'The selection, in order to become obnoxious to the Fourteenth Amendment, must be arbitrary and unreasonable, not merely possible, but clearly and actually so.' [Bachtel v. Wilson, 204 U. S. 1. c. 41.] Again, 'A classification may not be merely arbitrary, but necessarily there must be great freedom of discretion even though it results in ill-advised, unequal and oppressive legislation.' [Heath & Milligan Co. v. Worst, 207 U. S. 1. c. 354; Callahan v. Railroad, 170 Mo. 1. c. 494; Holden v. Hardy, 169 U. S. 1. c. 393 et seq.; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61; St. Louis Cons. Coal Co. v. Illinois, 185 U. S. 203.]

"The Legislature in the exercise of its power to classify is not required to trace with a hair line the boundaries of the class to which the resulting enactment shall apply.

"Neither State nor Federal Constitution proceeds upon the assumption that the Legislature is omniscient, nor is the discretion of that magistracy to be superseded by that of the courts in any case. It is only when the limits of legislative power have been transcended that the courts may extend a restraining hand."

In Blind v. Brockman, 321 Mo. 58, 12 S. W. (2d) 742, the court upheld the validity of a statute making it unlawful for soft-drink stands to maintain screens or blinds which obstruct the view of the interior of the premises, with a proviso that a section shall not be construed to include any department store, drug store, restaurant, or other place where a soft-drink stand is simply an adjunct to the regular business.

Unless this court san say as a matter of law that it is impossible for the public safety and convenience to be affected differently by the construction and maintenance of awnings over the public streets and their construction on private property, the court ought not to say that the legislative authority of the city abused its discretion in making the ordinance applicable to one class and not to the other.

V.  It is further contended that the ordinance is void in that it confers upon the license collector legislative authority in giving him the right to require the applicant to furnish such information as he may deem proper as a condition precedent to the issuance of the license; and because it invests the building commissioner with legislative power in that he may revoke the license of any company which does not perform its work so as to meet with his approval.  There is no allegation that any demand has ever been made by the license collector that he be furnished with any information as a precedent condition to the issuance of the license; nor is it claimed that the building commissioner has revoked or attempted or threatened to revoke any license; nor is there any record from which the assumption may be made that either of these officers will ever undertake to revoke a license after it is issued.  These provisions in the ordinance simply require these ministerial officers to ascertain the facts necessary to the proper enforcement of the ordinance and are in no sense delegations of legislative power.  [Alaska Mex. Gold Min. Co. v. Territory of Alaska, 236 Fed. 64, 70.]

VI.  Another cogent reason as to the lack of merit in this contention is that the petitioner not having suffered in any wise by reason of these provisions of the ordinance, cannot challenge its constitutionality for the reasons urged.  As was said in the Baskowitz case, 250 Mo. l. c. 89, "He cannot stand far afield and moot questions, to entertain the court withal,

but he must have been in a position to be hurt, and to have suffered hurt in some wise before he can be heard to complain.''

Therefore, we find no fault with this ordinance, save for the absence of the underlying and all-important condition that authority for its enactment does not appear in the charter, as required in Section 8702, supra. From this it follows that legal cause for the restraint of the prisoner is lacking and it is ordered that he be discharged. All concur, except *While, C. J.,* who dissents.