CITY OF BOLIVAR, MISSOURI, APPELLANT, v. OZARK UTILITIES COMPANY, A CORPORATION, RESPONDENT.—191 S. W. (2d) 368.

Springfield Court of Appeals. December 5, 1945.

*L. Cunningham* and *Herman Pufahl* for appellant.

*Spencer & McPherson, R. K. McPherson* and·*N. E. Jones* for respondent.

862

[black redacted area]

VANDEVENTER, J.—The City of Bolivar, a city of the fourth class, on the 2nd day of November, 1943, by its Board of Aldermen, enacted an ordinance, providing that:

". . . any public utility company whose franchise for the use of the streets, avenues, alleys or other public places in the City of Bolivar, for the purpose of maintaining and operating its distribution system expires, shall, after such expiration and until this Ordinance is repealed or otherwise modified, pay to the City of Bolivar, as rental for such use thereof, five per centum (5%) of its gross monthly revenues derived from the sale of its product or services within the City of Bolivar, so long as it continues, after the expiration of such franchise, to use such streets, avenues, alleys or public places for such purpose."

The respondent, Ozark Utilities Company, was a corporation supplying the City of Bolivar with electrical energy. It had operated under a franchise prior to the 21st day of November, 1943, and after said date, continued to furnish light and power without any material change in conditions and was so doing at the trial of this case.

During the month beginning November 21, 1943 and ending December 21, 1943, the gross income of the respondent within the City of Bolivar was $4359.15; $4227.49 being for the sale of electrical

energy and $131.66 for "Sales of Lamps, Appliances, Service Repairs, Material and Labor." If the ordinance above referred to was legal, and enforceable against respondent, the amount due the City by virtue of the ordinance would have been $217.96. These amounts were agreed upon by both parties at the trial.

Annually for ten years prior to November 21, 1943, the respondent had received and paid for a merchant's license from the City of Bolivar. Shortly after December 21, 1943, the City of Bolivar demanded that respondent pay the sum of $217.96, which, at all times, it refused to pay. This suit was brought by the City to recover that amount.

The trial court found for respondent and the City appealed. In its statement of facts in this court, appellant says:

"The decisive question in this case is the validity, or invalidity, of the ordinance levying the tax.

"If the City had authority to enact the ordinance and levy the tax, the judgment should be reversed and the cause remanded, or a proper judgment be made by this Court.

"If the City did not have authority to enact the ordinance and levy the tax, the judgment should be affirmed."

In paragraph one of its "Points and Authorities," Appellant says:

"Under the evidence and the admissions in this case there is but one issue, viz.: Did the City of Bolivar, Missouri, have power to enact the ordinance levying a tax on the defendant of five percent of its gross revenue? The ordinance is not challenged in any other respect."

At the close of the trial, the Abstract of the Record shows the following:

"By the Court: Now inasmuch as we haven't gone into the details of the proceedings of the City Council in the enactment of this ordinance, I presume the only question involved is the—that is, with reference to the ordinance—is the right of the city to pass and enforce such an ordinance.

"By Mr. McPherson: (for Respondent) That is correct, sir, that is the only issue in this case.

"By Mr. Cunningham: (for Appellant) We did offer in evidence, however, the vote of the city council on the passage of the ordinance and the signature of the ordinance and publication—That was all gone into, but I don't think that is in issue.

"By the Court: That part is not being questioned by the defense, as I understand it.

"By Mr. McPherson: No, sir.

"By the Court: If the City Council had the power to pass such an ordinance, then the ordinance is admitted to be valid, otherwise, not."

So it would seem to have been agreed by all parties concerned, including the court, that the only question was, ''Is the ordinance valid and enforceable against Respondent?''

The law is well settled in this State that a municipality has no inherent power to tax. This power rests in the State, primarily, and may be conferred upon a municipality by constitutional or statutory provisions. The grant must be specific and, in case of doubt, the power must be denied. This rule applies to all municipal corporations whether under special charter or general statute. [Siemens v. Shreeve, 296 S. W. 415, 317 Mo. 736; City of St. Charles v. St. Charles Gas Co., 185 S. W. (2d) 797; City of Lebanon v. Joslyn, 58 S. W. (2d) 289; City of Ozark v. Hammond, 49 S. W. (2d) 129, 329 Mo. 1118; Sec. 7440, R. S. Mo. Ann. 1939.]

In the case of City of St. Charles v. St. Charles Gas Co., *supra*, the Supreme Court said:

''But, as to the latter point and in construing the city's charter, it must be kept in mind that a municipality possesses no inherent power to tax. If there is a doubt as to the delegation and existence of the power, the doubt must be resolved against the city, as the State's delegation of the authority to tax must be clear. [Siemens v. Shreeve, 317 Mo. 736, 296 S. W. 416.] Prior to 1889 there was no limitation, at least as to certain cities, on the occupations or pursuits, whether named or not, which the city might tax. [Siemens v. Shreeve, *supra*.] But since 1889 our statutes relating to municipalities have contained this delimitating declaration of policy (Ex parte Lockhart, 350 Mo. 1220, 171 S. W. (2d) 660): 'No municipal corporation in this State shall have the power to impose a license tax upon any business avocation, pursuit or calling, unless such business avocation, pursuit or calling is specially named as taxable in the charter of such municipal corporation, or unless such power be conferred by statute:' [Mo. R. S. A., section 7440.] This plain statutory declaration of policy is applicable to all cities and 'it clearly places a limitation upon the power to tax occupations.' [Pierce City v. Hentschel (Mo.), 210 S. W. 31, 32.] Unless the business or occupation is specifically enumerated as one subject to a license tax, the general rule is that the municipality has no authority to so tax it. [Keane v. Strodtman, 323 Mo. 161, 18 S. W. (2d) 896; Siemens v. Shreeve, *supra*.]''

Appellant contends that the respondent was a merchant within the meaning of Section 7196, Revised Statutes of Missouri, 1939, by the provisions of which section, cities of the fourth class are permitted to ''License and levy and collect a license tax on . . . merchants of all kinds,'' and that hence this ordinance is legal. But was respondent a merchant? This same statute gives cities of the fourth class power to license and tax ''telegraph companies, (and) telephone companies,'' but does not mention power and light com-

panies. If respondent, a power and light company, is included under the designation "merchants of all kinds" these two other public utilities would certainly be included. The Legislature treated them as separate and distinct from merchants, by designating them specifically. Its reason for so doing must have been that it was not its intention that they be included under the general designation "merchants of all kinds."

It was agreed that the total gross receipts for the month in question were $4227.49 for electrical energy and that the sum of $131.66 was received for lamps, appliances, service repairs and materials and labor. How much of this sum was for merchandise, if any, does not appear but if respondent could be taxed as a merchant, it would be only on the amount of merchandise it sold as a merchant.

In the St. Charles case, *supra*, the statute relating to cities of the third class, of which St. Charles was one, was considered. [Sec. 6986, R. S. Mo. Ann.] That section gave such cities the right to levy and collect a license tax on "merchants of all kinds" and to "levy and collect a license tax and regulate . . . light, power and water companies" but the Supreme Court held that it had no power to levy such tax on a "gas company" because such power was not specifically conferred by statute. The fact that perhaps an infinitesimal part of its gas was used for lighting did not alter the situation. "Its principal, primary and substantial business is that of a gas company, as such companies are now commonly known, furnishing gas for cooking and heating." [l. c. 185 S. W. (2d) p. 800.]

The evidence in this case, inferentially, shows that respondent sold some light bulbs ("when it could get them") during the month in question but there is no evidence as to the amount. Its business was selling to the general public electricity generated at its plant. In this business it was not a merchant. [Commonwealth v. Meyer, 23 S. E. (2d) 353, 355-6, 180 Va. 466; State v. Coastal Petroleum Corp., 198 So. 610, 612, 240 Ala. 254; Magnolia Petroleum Co. v. City of Broken Bow, 87 Pac. (2d) 319, 321, 184 Okla. 362; United States Biscuit Co. v. Stokes, 124 S. W. (2d) 230, 174 Tenn. 111; State v. Downs, 197 So. 379, 29 Ala. App. 442; J. R. Raible Co. v. State Tax Commission (Ala. App.), 194 So. 556; Nickles v. Echelberger (Ohio App.), 31 N. E. (2d) 474, (Citing City of Ozark v. Hammond, *supra*); Fishbach Brewing Co. v. City of St. Louis, 95 S. W. (2d) 335, 231 Mo. App. 793; People v. Stevens, 51 Pac. (2d) 1179, 10 Cal. App. (2d) Supp. 763; Chattanooga Plow Co. v. Hays, 125 Tenn. 148, 140 S. W. 1068; City of Ozark v. Hammond, *supra*; City of Lebanon v. Joslyn, *supra*.]

Perhaps the leading case in the United States on this question and the one most frequently cited is Chattanooga Plow Co. v. Hays, *supra*. In that case it was said:

"The marked distinction between a manufacturer and a merchant is that the merchant, or dealer, sells to earn a profit, and the manufacturer sells to take profit already earned. He must buy the materials out of which to make his finished product, and he must sell the product of his factory after it is finished. But such dealings are not his occupation. The one supplies him with the materials with which to pursue it, while the other merely enables him to take the profit earned."

This case was approvingly cited and quoted from in City of Ozark v. Hammond, *supra*. Respondent, here was a public utility, (State ex rel. Cirese v. Public Service Commission, 178 S. W. (2d) 788) furnishing light and power to the general public, and we have been cited to no statutory provision (and find none) authorizing a city of the fourth class to impose an occupation tax on such a company.

Appellant argues that it has the right to make a reasonable charge for the use of its streets and cites City of Lancaster v. Bugg & Melvin, 118 Mo. App. 570, 76 S. W. 314, City of Plattsburg v. Peoples Telephone Co., 88 Mo. App. 306, and State ex inf. v. Telephone Co., 337 Mo. 642, 85 S. W. (2d) 613, as supporting that view. In the City of Lancaster case (decided 1906) the telephone company had, by ordinance, entered into a contract with the city to erect and operate a telephone exchange and agreed to pay to the city two per cent. of the gross receipts collected from its system. The City contended the company had omitted certain items from a statement which it was required under its contract to make, upon which the city was entitled to two per cent. It brought a suit therefor and a demurrer to its petition was sustained upon the theory that the contract included two per cent. on long distance calls. The Kansas City Court of Appeals reversed the trial court asserting that the contract did not include such items, and said: "These conclusions require us to look upon the accepted ordinance as a contract that both parties thereto had the legal right to make and, in interpretation of the term in dispute, a controlling influence must be accorded to the mutual intention of the parties to be collected from the language of the instrument and from the circumstances in which it was made."

In City of Plattsburg v. People's Telephone Co., supra, the petition alleged a contract with the telephone company to pay two per cent. of its gross receipts to the city for a franchise permitting it to operate its business. A demurrer thereto was sustained on the ground that the statute, under which the franchise was granted (See State ex inf. v. Railroad, 146 Mo. 155, 47 S. W. 959), was void for uncertainty. The Kansas City Court of Appeals reversed the trial court stating that the city, under its police powers, had the right to enter into such a contract, regardless of the void statute, and said it "is not a tax on the property of defendants."

However, in Viquesney v. Kansas City et al., 266 S. W. 700, 305 Mo. 488 (decided in 1924), the Supreme Court held that this kind of tax, an occupation tax, was one form of excise tax, was for the purpose of raising revenue, and the police power could not be used for such purpose, although at the same time it might be both a police regulation and a revenue measure. "The city must have express authority in its charter to levy such a license tax." The court then held (*per curiam* on motion for re-hearing) that the Kansas City Charter gave the city such authority. But such authority does not appear in statutes governing cities of the fourth class.

State ex inf. v. Telephone Co., *supra*, relied upon by appellant, was a *quo warranto* proceeding where the City of Lebanon was seeking to oust a telephone company whose franchise had expired. The question to be decided here was not here presented.

It is true that respondent continued to furnish lights and power to appellants, as it had under its franchise, but there is no evidence that it at any time indicated its willingness to pay five per cent. to the City of Bolivar under the ordinance attempting to levy the five per cent on its gross earnings. In fact, at the first opportunity, it flatly refused to pay it. The city could not have been deceived about that. Under these circumstances there was no implied contractual relation between the city and respondent whereby the latter agreed to accept the ordinance and pay the tax.

Appellant also cites City of St. Louis v. Laclede Power & Light Co., 152 S. W. (2d) 23, 347 Mo. 1066. This was a suit by the City for $473,419.83, being five per cent of defendant's gross revenue for the years 1929 to 1933, inclusive under an ordinance passed in 1884. The Supreme Court held this to be an exaction or rental charge for the privilege of using the city streets under a franchise from the city and defendant could only be bound by an agreement in writing as required by the terms of the ordinance. The court said:

"We are of the opinion that the charge of five per cent is clearly a rental to be paid by those who obtain a franchise under the terms of the ordinance, and who are required, as a condition precedent to obtaining such a franchise, to agree in writing to pay the five per cent. The trial court so found."

We are of the opinion that the ordinance enacted by the City of Bolivar was not valid and binding upon this respondent and that the judgment of the trial court should be affirmed. It is so ordered. *Fulbright, P. J.*, and *Blair, J.*, concur.